279 N.J. Super. 414 (1995)
652 A.2d 1259
VITO'S TOWING, INC., PLAINTIFF-APPELLANT,
v.
RONALD KEMP, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted January 4, 1995.
Decided February 8, 1995.
*415 Before Judges MICHELS, STERN and KEEFE.
*416 William J. Pollinger, attorney for appellant.
Ronald Kemp, respondent, filed a pro se letter brief.
The opinion of the court was delivered by KEEFE, J.A.D.
Plaintiff, a towing service, appeals from a judgment dismissing its complaint against defendant wherein it sought damages for towing services, storage fees, and related charges. On appeal, plaintiff maintains that the judgment was against the weight of the evidence. We agree and reverse for the reasons stated herein.
The facts are essentially undisputed. Defendant was the owner of a 1981 Toyota automobile which, on August 24, 1990, showed 92,676 miles on its odometer. On that day, the vehicle was involved in a motor vehicle accident in the Borough of Clifton and, as a result, was apparently totaled.
Plaintiff, a towing service provider and repair facility under contract with the Borough of Clifton, was directed by the Clifton Police Department to remove the vehicle from the scene of the accident to its premises.
Defendant failed to take possession of the vehicle even after being notified by plaintiff and the Borough of Clifton that the vehicle would be sold if not claimed. The Borough of Clifton considered the vehicle abandoned pursuant to the provisions of N.J.S.A. 39:10A-8, and notified defendant of its intention to sell it at a public auction pursuant to N.J.S.A. 39:10A-1d.
Defendant could have retained title to the vehicle by paying the towing and storage charges at any time prior to the public sale. N.J.S.A. 39:10A-2. However, he failed to do so.
Consequently, the vehicle was offered for sale, along with several other automobiles on November 20, 1990. At that time, defendant owed a total of $1,490.45 for towing, storage and related charges. Plaintiff bid $10 for the vehicle. No one other than plaintiff bid on the vehicle. Plaintiff testified that it is essentially *417 forced to buy such vehicles at public sales if there are no other bidders simply so it can dispose of them and get them off its property. Plaintiff's principal testified that he later sold the vehicle for junk, receiving $50 or $60 for it.
At trial, defendant appeared pro se. He did not challenge the regularity of the proceedings leading up to the sale of the vehicle, nor did he contest the charges levied against him by plaintiff for towing, storage or related items. Notably, defendant did not deny that the vehicle was totaled as a result of the accident. Rather, defendant maintained that he should receive a credit against plaintiff's charges for the amount plaintiff received upon the resale of the vehicle. Defendant protested the fact that plaintiff had never furnished him with documentation concerning the re-sale.
As noted earlier, the court dismissed plaintiff's complaint. The crux of the court's decision was as follows:
I find that it was not an arms length transaction. Vito actually purchased it, and there's no documentation to show what was actually received for the vehicle on sale, nothing to substantiate it. Since it was not an arms length transaction by way of any auction that I can determine, I believe that there's a presumption that the amount, reasonable value of the vehicle would satisfy any deficiency.
Accordingly, I find that there's a presumption that the reasonable value of the vehicle would satisfy any deficiency, and I'm entering a judgment of no cause of action and dismissing the complaint.
Although the judge did not specifically state what sale he believed was not arms length, it appears to us that he was addressing plaintiff's re-sale of the vehicle, essentially for its junk value. However, regardless of which sale he was addressing, the ruling assumed that defendant was entitled to a fair market value credit against any claim plaintiff could bring against him for a deficiency after the conclusion of the public sale.
The statute does not directly address the subject. However, it seems to imply that plaintiff is entitled to a credit against outstanding charges only for the amount received at the public sale. See N.J.S.A. 39:10A-5 and -17 (the latter section addressing credits where the sale has been conducted pursuant to statute by *418 the repair facility rather than the public agency as was done here.) There is no case law addressing the issue.
Thus, at least according to statute, defendant was entitled to only a ten dollar credit against plaintiff's charges based upon plaintiff's bid at the public sale. However, in the exercise of inherent equity jurisdiction, courts have recognized the need to prevent unfairness in deficiency proceedings conducted subsequent to court ordered public sales. In such circumstances, courts have allowed a debtor fair market value credit against a deficiency judgment where there is evidence that the bid at the public sale was less than fair market value. See Citibank, N.A. v. Errico, 251 N.J. Super. 236, 597 A.2d 1091 (App.Div. 1991) (applying the equitable concept to mortgage foreclosure proceedings). We assume the trial judge in this case had this concept in mind when he rendered his decision. Indeed, we would agree that "nothing ... precludes a court from applying equitable principles to impose a fair market value credit to prevent a windfall or where circumstances require equitable relief in the interests of justice." Id. at 247, 597 A.2d 1091. We conclude that equitable principles may be applied to public sales conducted pursuant to N.J.S.A. 39:10A-1 to -20 in appropriate cases. Where as here the creditor is the only bidder at the public sale and the bid is a minimal one an inquiry into fair market value credit is appropriate.
However, we disagree with the trial court's application of that principle to these facts. Defendant did not challenge plaintiff's assertion that the vehicle was totaled as a result of the collision and that its value, if any, was for scrap. There is nothing in this record to justify a conclusion that plaintiff's re-sale of the vehicle for $50 or $60 did not truly represent its junk value. It must be remembered that this was a nine year old vehicle with more than 92,000 miles on its odometer. The judge should not have rejected plaintiff's testimony out-of-hand. In fairness to plaintiff, it had no way of knowing that the re-sale value of the car would be a relevant issue in such a proceeding. As noted earlier, the statute implies otherwise. In the absence of contrary proof *419 offered by defendant, the price at which the vehicle was re-sold is competent proof of its fair market value and should ordinarily be accepted as such. A short continuance should have been granted to plaintiff to document the re-sale value if the judge questioned plaintiff's credibility.
The judgment is reversed and the matter is remanded for further proceedings. Plaintiff is granted leave to supplement its proofs by the documents relative to the re-sale. Defendant is granted leave to prove that the fair market value exceed the resale price.